### RUSSELL and another *against* FRISBIE.

19 205
64 549

The declarations of a party are admissible in his favour, where they are so
connected with some material act as to explain or qualify it, or show the in-
tent with which it was done.

In an action brought by *A* against *B*, as the owner of a certain brig, in which
*A* had shipped merchandize, for the non-delivery of such merchandize, it ap-
peared, that *B* was the general owner of the brig, and that *C*, on the 17th of
*September* and before, was the authorized master; but that *B*, on the 18th of
*September*, took from on board of the brig her papers, and put them into the
custody of *D*, which were never returned to the brig; and that said merchan-
dize was shipped after this transaction. *B* claimed, that he, at this time, re-
voked the authority of *C*, as master; and that *C* then surreptitiously obtained
other papers, and ran off with the vessel, sailing her without any authority
from *B*. To establish this claim, *B* introduced, with other evidence, the tes-
timony of *D*, that *B*, when he delivered the papers to him, said, that "*C's*
wife intended to go in the brig, and if so, he was fearful there would be diffi-
culty, and he could not let the vessel go: he did not want the vessel to go to
sea, if *C's* wife was going in her." Held, that these declarations, so made,
were admissible for the purpose for which they were offered.

THIS was an action on the case, for the non-delivery of certain lumber and shingles, which were, by the plaintiffs, put on board the brig *Energy, Major R. Frisbie,* master, owned by the defendant, at the port of *Wilmington,* in *North-Carolina,* to be transported to *Point a Petre,* in the island of *Gaudaloupe,* and there delivered to *Jules Fluriot,* the consignee of the plaintiffs.

The cause was tried at *New-Haven, January* term, 1848, before *Hinman,* J.

To prove that the defendant was the owner, and *Major R. Frisbie* the master, of said brig, the plaintiffs read in evidence the register of that vessel, taken out on the 17th of *September,* 1845, and her clearance for the port of *Wilmington,* on the same day. The defendant did not deny that he was the owner of said brig, nor that *Major R. Frisbie* was the master thereof, on the day above mentioned. But he claimed, that after the papers were taken out at the custom-house, and delivered to *Major R. Frisbie,* as master, while the brig was lying at the harbour of *New-Haven,* the defendant, having ascertained that *Major R. Frisbie* was about to take his wife with him on the voyage, to which the defendant objected, took the brig's papers from on board of her, into his own possession, and revoked the authority of the master. To prove these facts, the defendant offered, with other evidence, *John Hempstead,* as a witness, who testified, that on the 17th of *September,* 1845, the defendant brought the brig's papers, and deposited them with him, to keep until he should call for them ; and to show the motive for so doing, the defendant further offered to prove, by this witness, that he, the defendant, at the time when he brought and delivered the papers to him to keep, declared, that *Major R. Frisbie's* wife intended to go in the brig, and under these circumstances, he could not let the vessel go, as he was fearful there would be difficulty, if *Major R. Frisbie* took his wife with him ; and he did not want the vessel to go to sea, if the master's wife was going in her. The witness also stated, that this took place just before the defendant went to *New-York,* as master of another vessel of his, the sails of which were then up ; and that the witness kept the papers a day or two, when the defendant called and took them. To the admission of the

declarations of the defendant, so offered in evidence, the <span>*New-Haven,*<br>July, 1848.</span>
plaintiffs objected; but the court overruled the objection, and
admitted the evidence.

<span>Russell<br>*v.*<br>Frisbie.</span>

It was proved, that the defendant, on the 18th of *Septem-ber*, 1845, took the papers from on board the brig, and from the possession of the master, and that they were never returned to him; but that *Major R. Frisbie*, on the 19th of *September*, whilst the defendant was absent in the city of *New-York*, without the knowledge of the defendant, obtained from the custom-house new papers, of the same tenor and date as the original ones, and therewith proceeded with the brig, as master thereof, upon the voyage.

The plaintiffs claimed, that after such new papers were obtained, by *Major R. Frisbie*, and before the brig sailed from the port of *New-Haven*, he was, by the defendant, voluntarily restored to the command of her, and sailed as master thereof, with the defendant's consent and approbation. This the defendant denied; and thus the authority of *Major R. Frisbie*, as master, at the time the lumber and shingles were shipped, became the principal point in controversy.

The case being submitted to the jury upon the evidence, they returned a verdict for the defendant; and the plaintiffs thereupon moved for a new trial.

*Bissell* and *L. G. Peck*, in support of the motion, contended, 1. That by the general rule of law, the declarations of the defendant to *Hempstead* could not be given in evidence by the defendant, for the two-fold reason, that as related by *Hempstead*, they were mere hearsay, *i. e.*, what another man said, out of court—and that they were the declarations of the party by whom they were offered.

2. That these declarations were not admissible as forming a part of the *res gesta—the thing done*. The claim of the defendant was, that the authority of the master was revoked. The testimony as to the matters of *fact*, such as taking the papers from the vessel, and giving the custody of them to *Hempstead*, was not objected to; but what the defendant said to *Hempstead* about the master's wife, his apprehensions of difficulty, if she went in the brig, and the unwillingness he expressed to let the brig go to sea, if this obnoxious woman

was to go in her, constituted no part of the act of revocation. Declarations, to become part of the *res gesta*, must be made simultaneously with the act in question, must be fitted to develope its nature and character, and must so harmonize therewith as to be one with it. *Enos* v. *Tuttle*, 3 *Conn. R.* 247. 250.

3. That this case does not fall within any other class of cases where declarations out of court have been held admissible.

4. That the declarations in question, if otherwise unexceptionable, were *not relevant* to prove a revocation of authority. They tended to prove only, that the defendant disapproved of the master's taking his wife with him on the voyage.

*Kimberly* and *C. A. Ingersoll*, contra, contended, 1. That the declarations made by the defendant, when he brought the brig's papers and deposited them with *Hempstead*, were evidence to show the motive of his thus depositing them. They were among *the things done*—a part of the *res gesta*. 1 *Greenl. Ev. p.* 185. *s.* 108.   1 *Phil. Ev.* 231.   *Tuttle* v. *Enos*, 3 *Conn. R.* 250. per *Hosmer*, Ch. J.   *Wooden* v. *Cowles*, 11 *Conn. R.* 292.   *Avery* v. *Clemons*, 18 *Conn. R.* 306.   *Pool* v. *Bridges*, 4 *Pick.* 378.   *Boyden* v. *Moore*, 11 *Pick.* 362.   *Thorndike* v. *Boston*, 1 *Metc.* 242.   *Kilborn* v. *Bennett*, 3 *Metc.* 199.   *Gorham* v. *Stanton*, 5 *Greenl.* 266. *Bateman* v. *Bailey*, 5 *Term R.* 512.   *Bibb* d. *Mole* & ux. v. *Thomas*, 2 *W. Bla. R.* 1044.

2. That if the court erred in admitting the declarations in question, still a new trial will not be granted, as the plaintiffs have not been prejudiced by such admission ; for it appears by the motion, that the authority of the master had been revoked or suspended, as it was proved by the witnesses on both sides, and not denied, that the defendant, on the 18th of *September*, took from the master the brig's papers, which were never returned ; and without ship's papers, no one, not even the owner, has a right to sail the vessel from one district to another. Here was a revocation, by the *acts* of the defendant, independently of any declaration made by him.

HINMAN, J. The defendant's liability, in this case, depended

upon whether his brother, *Major R. Frisbie,* was the master of his brig, the *Energy,* and was sailing her with his consent, at the time he took on board the plaintiff's lumber ; or, whether he had run away with the vessel, and was sailing her without any authority from the owner.   The defendant claimed, that becoming dissatisfied with the conduct of his brother, he took from him, and from on board the brig, the papers which had constituted him the master, and which alone authorized him to sail the vessel, and revoked his authority as master ; after which, he fraudulently procured other papers, and ran off with the vessel.   It was proved, that the defendant, on the 18th of *September,* 1845, did in fact take said papers from on board the brig, and from the possession of his brother, and it was not claimed that they were ever returned to him.   Mr. *Hempstead* testified, that the defendant deposited the papers with him, to keep until he called for them ; and the question is, whether the court erred, in admitting certain declarations of the defendant, to this witness, made at the time of so depositing the papers with him.   This, again, depends upon whether these declarations were so connected with any material act, as to be admissible for the purpose of explaining or qualifying it, or of showing the intent with which it was done.   If they were not admissible on this ground, it was clearly an error to receive them, as they were made by the party in interest, and were also hearsay.

The counsel do not differ in regard to the admissibility of declarations, which accompany and characterize an act. They both cite the opinion of Ch. J. *Hosmer,* in *Enos* v. *Tuttle,* 3 *Conn. R.* 250., as containing the true rule ; and the nature of the subject is such as probably to prevent any more precise or accurate rule than the one there given.   To be admissible, they must be made at the time of the act done, and be calculated to unfold its character.   The difficulty is in the application of the rule ; and this again, generally arises from the difficulty of determining the precise nature of the act itself.     In this case, the plaintiff's counsel look at the mere act of depositing the paper with *Hempstead,* as the whole act of *Frisbie,* which his declarations went to explain. Hence, they consider what was said in regard to his unwillingness to let his brother go to sea in the vessel, as not at all calculated to characterize it.   But the depositing of the pa-

pers was a small part of what was done at the time. Of it-self, it was a matter of no great importance. It was evidence that the defendant had the papers in his possession, at that time ; and, his telling *Hempstead* to keep them, showed he did not intend they should immediately go into the possession of another. This was perfectly consistent with the fact, that he was only keeping them for some temporary purpose ; for the convenience of his brother, or because their arrangements were not then completed. It did not show how he came by the papers, after they had once been in his brother's possession ; or that he had revoked his authority. Indeed, disconnected from the other evidence, it hardly tended to prove any such revocation. When, however, it is examined in connexion with proved and admitted facts, its aspect is very different.

It was a conceded fact, that, on the 17th day of *September, Major R. Frisbie* was the master of this vessel, by the defendant's appointment. These papers, it appears, bore that date ; and the master had them on board the vessel. This testimony of *Hempstead* was only a part of the evidence going to show that this authority was revoked. The chief part of the evidence consisted in the defendant's going on board, and taking the papers from the master, into his own possession. All this part of the transaction was proved, by witnesses on both sides ; and was not denied. It was, therefore, a mere incident of his taking the papers, that he deposited them with *Hempstead* to keep. For what purpose he made this deposit, is immaterial. It appears he was himself on the eve of sailing, in another vessel ; and, probably, he thought it better to leave them with *Hempstead* than to take them with him to *New-York*.

As then, from the whole case it appears, that this deposit of the papers followed immediately the act of taking them, and was a mere incident of that act, so that the whole was but one transaction ; the declaration made while depositing the papers, characterized the act of taking them, as well as the act of depositing them, and thus showed that he did it for the purpose of revoking his brother's authority as master. Indeed, the declaration that he was unwilling to let his brother go to sea in the vessel, made while engaged in this transaction, was as strong evidence of the revocation of authority

previously conferred, as can well be imagined.   Had *Hemp-*
*stead* been on board the vessel, and there received the papers
at the time they were first taken, the defendant making the
declaration that he was unwilling his brother should go to sea
in the vessel, and telling *Hempstead* to keep the papers until
he called for them ; it would seem there could be no doubt of
the propriety of proving declarations so made.   But can it
make any difference, because he stepped from the vessel's
deck to Mr. *Hempstead's*, before he made the declaration ?
If, then, we are right in considering the deposit of the pa-
pers as a continuation of the act of taking them, there seems
to be no doubt that the accompanying declarations were
properly received.

Whether what was said in regard to the master's wife, was
admissible, it is not necessary to determine.   The defendant
gave that as his reason for taking the papers, and refusing to
let his brother go to sea in the vessel.   If the court had been
asked to separate that from the declaration, that under the
circumstances he was unwilling to let his brig go to sea with
his brother in her, it would have raised the question whether
his reason for this was admissible, or of any importance.
Obviously, it was not, unless it was so connected with the
other part of the declaration, as to be necessary to a full un-
derstanding of his meaning.   Perhaps there is ground for
saying, that these words were necessary to a full understand-
ing of what was said in immediate connexion with them ; but
it is enough that they were only objected to, in connexion with,
and as a part of, declarations, which, we are satisfied, were
admissible.

This being the only point made by the plaintiffs, it follows,
there should be no new trial.

In this opinion the other Judges concurred, except ELLS-
WORTH, J., who was absent.

New trial not to be granted.